## Eben A. Holmes *vs.* Harriet A. Adams.

### Waldo.   Opinion December 27, 1912.

*Divorce.  Descent.  Distribution.  Domicil.  Estate.  Heirship.  Illegitimate
Child.  Issue.  Laws of Nevada in relation to heirship.  Money
had and received.  Nonsuit.  Public Laws, Chapter 14.*

The plaintiff is the son of Aurelius Holmes, deceased, who was the illegitimate child of Rhoda A. Patterson, mother of Alonzo Patterson, deceased.
*Held:*

1. That whatever rights the plaintiff has are derived from legislative enactment.  At common law his father was incapable of inheriting.

2. It has been invariably held that a statute allowing an illegitimate child to inherit from his mother does not allow him to inherit from her lineal or collateral kindred.

3. It is clear that the words "the same as if born in lawful wedlock" do not in this case enlarge the rights of the plaintiff to include inheritance from lineal or collateral kindred.

4. The plaintiff cannot invoke the aid of the present statute of Maine to control or in any manner influence the distribution of personal estate of an intestate whose domicil was in the state of Nevada.

5. As all rights of inheritance become vested at the death of the person from whom they are derived, the statutes in force at the time of his death govern the disposition of the estate.

6. The succession to and disposition and distribution of personal property, wherever situated, is governed by the law of the domicil of the owner or intestate at the time of his death, without regard to the location of the property, or the place of the death.

On agreed statement of facts.   Plaintiff nonsuit.

This is an action of assumpsit for money had and received and is submitted to the Law Court upon an agreed statement of facts, with the stipulation that, if under the statement of facts, the plaintiff can maintain this action upon proof of the relationship claimed by him, the action is to stand for trial; otherwise, a nonsuit is to be entered.   Plea, the general issue.

The case is stated in the opinion.

*Arthur Ritchie,* for plaintiff.

*Dunton & Morse,* for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

HANSON, J. This is an action for money had and received, and comes to this court on the following agreed statement of facts:

Alonzo Patterson, brother of the defendant, Harriet A. Adams, was a resident of the state of Nevada and died in that state previous to May 20, 1907, leaving no widow or issue. His estate was duly administered in the state of Nevada, and the defendant, Harriet A. Adams, on May 20, 1907, received from the administrator of said estate the sum of thirteen hundred and ten dollars and four cents ($1310.04) as her proportion of said estate, being one-half of said estate, and her brother Frank M. Patterson received the other half of said estate as his share. The plaintiff in this action received no part of said estate.

The following is a correct copy of so much of the Compiled Laws of the state of Nevada, as relates to heirship of illegitimate children or their offspring, compiled in 1900.

"ILLEGITIMATE CHILD.

"3046. Sec. 280. Every illegitimate child shall be considered as an heir of the person who shall acknowledge himself to be the father of such child by signing in writing a declaration to that effect in the presence of one credible witness who shall sign the declaration also as a witness, and shall in all cases be considered as heir of the mother, and shall inherit in whole or in part, as the case may be, in the same manner as if born in lawful wedlock. The issue of all marriages deemed null in law or dissolved by divorce shall be legitimate."

The plaintiff is the son of one Aurelius Holmes, deceased, and claims that said Aurelius Holmes was the illegitimate child of Rhoda A. Patterson, mother of said Alonzo Patterson, deceased.

If, under this statement of facts, the plaintiff can maintain this action upon proof of the relationship claimed by him, the action is to stand for trial, otherwise a nonsuit to be entered.

The writ and pleading are made a part of the case.

It is contended by the counsel for the plaintiff that this action may be maintained, because:

1. The words "in the same manner as if born in lawful wedlock" appearing in the statute of Nevada, supra, should have the same force and effect as the Act of 1887, ch. 14, Public Laws of Maine, which includes in express terms lineal and collateral kindred.

2. Because ch. 14 of the Act of 1887 is almost identical with the statute of Nevada, and he has a remedy in this State notwithstanding the decree of the Judge of Probate in Nevada ordering distribution of the personal estate involved in this case.

The defendant contests each position taken by the plaintiff.

Ch. 14 of the Public Laws of Maine for the year 1887 reads as follows:

"An illegitimate child born after March 24, in the year of our Lord 1864, is the heir of his parents who intermarry. And any such child born at any time is the heir of his mother. And provided, the father of an illegitimate child adopts him or her into his family, or in writing acknowledges before some justice of the peace or notary public, that he is the father, such child is also the heir of his or her father. And in either of the foregoing cases, such child and its issue shall inherit from its parents respectively, and from their lineal and collateral kindred and these from such child and its issue the same as if legitimate."

Whatever rights the plaintiff has are derived from legislative enactment. At Common Law his father was incapable of inheriting. Statutes similar to the statute of Nevada, presented in the agreed statement, have been passed upon in many states, and it has been invariably held that a statute allowing an illegitimate child to inherit from his mother does not allow him to inherit from her lineal or collateral kindred. 5 Cyc., 640, 641; *Messer* v. *Jones,* 88 Maine, 349; *Pratt* v. *Atwood,* 108 Mass., 40; *Moore* v. *Moore,* 35 Vt., 98; *Bacon* v. *McBride,* 32 Vt., 585; *Stevenson's Heirs* v. *Sullivant,* 5 Wheaton, 207. In the same authorities, the rule requiring strict construction of statutes is emphasized. Applying the rule to the statute of Nevada, it is clear that the words "the same as if born in lawful wedlock" do not in this case enlarge the rights of the plaintiff to include inheritance from lineal or collateral kindred. *Pratt* v. *Atwood,* supra. Prior to the Act of 1887, ch. 14, supra, the laws of Maine were practically the same as the present statute of Nevada, and illegitimate children could not inherit from lineal or collateral kindred. That act was passed for the express purpose of removing

such disability. *Messer* v. *Jones,* 88 Maine, 349; *Lawton* v. *Lane,* 92 Maine, 170.

But the plaintiff cannot invoke the aid of the present statute of Maine to control or in any manner influence the distribution of personal estate of an intestate whose domicil was in the state of Nevada. By the weight of authority as all rights of inheritance become vested at the death of the person from whom they are derived, the statutes in force at the time of his death govern the disposition of the estate. *Hughes* v. *Decker,* 38 Maine, 153; *Messer* v. *Jones,* supra; 14 Cyc, 20, and cases cited.

The succession to and disposition and distribution of personal property wherever situated is governed by the law of the domicil of the owner or intestate at the time of his death, without regard to the location of the property or the place of the death. 14 Cyc., 21 and cases cited. *Ross* v. *Ross,* 129 Mass., 245. And, too, as a general rule, legitimacy is to be ascertained by the law of the domicil. *Ross* v. *Ross,* supra.

Counsel for the plaintiff cites *Ross* v. *Ross,* supra, as favoring the doctrine that "where an illegitimate child has been legitimated, such legitimacy follows the child wherever it may go, and entitles it to all the rights flowing from such status;" but that case expressly holds that:

"It is a general principle, that the status or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other's property, is fixed by the law of the domicil; and that this status and capacity are to be recognized and upheld in every other state, so far as they are not inconsistent with its own laws and policy. Subject to this limitation, upon the death of any man, the status of those who claim succession or inheritance in his estate is to be ascertained by the law under which that status was acquired; his personal property is indeed to be distributed according to the law of his domicil at the time of his death, and his real estate descends according to the law of the place in which it is situated; but, in either case, it is according to those provisions of that law which regulate the succession or the inheritance of persons having such a status."

That case is therefore in harmony with the line of decisions hereinbefore cited in support of the contention of the defendant, that

the law of the domicil of the owner or intestate governs the distribution of his personal estate.

If the question involved related to the descent of real estate in this State, the remaining citations in plaintiff's brief would be in point; but where, as in this case, the only question is one relating to personal property, the law of the domicil of the intestate must control, and the proper course for a distributee is to apply to the Probate Court for a decree of distribution. Upon the passing of such decree in his favor, he has a plain remedy against the administrator, who also is protected by the decree. *Cathaway* v. *Bowles*, 136 Mass., 54.

All distributive shares must be determined in the Probate Court before they become payable to the distributee. *Howes* v. *Williams*, 92 Maine, 492; *Graffam* v. *Ray*, 91 Maine, 234.

So far as the case shows, the plaintiff did not apply to the Probate Court in the state of Nevada for a decree in his favor. It is apparent that he has no remedy in this State, even upon proof of the relationship claimed by him. In accordance with the stipulation in the agreed statement, the entry will be,

*Plaintiff nonsuit.*