Malcolm W. HASKELL et al., Defendants Below, Appellants,

v.

WILMINGTON TRUST COMPANY et al., Defendants Below, Appellees.

Supreme Court of Delaware.

March 14, 1973.

Charles S. Crompton, Jr., and Michael D. Goldman, of Potter, Anderson & Corroon, Wilmington, Guardian Ad Litem for appellants and Attorney for Guardian Ad Litem respectively.

H. James Conaway, Jr., and Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, Guardian Ad Litem for Christopher D. Haskell and Attorney for Guardian Ad Litem respectively.

Rodney M. Layton, and Richard G. Elliott, Jr., of Richards, Layton & Finger, Wilmington, for Wilmington Trust Co.

WOLCOTT, Chief Justice, HERRMANN, Justice, and WRIGHT, Judge, sitting.

WOLCOTT, Chief Justice:

This is an appeal from an Order of the Chancellor giving the Trustee, Wilmington Trust Company, instructions with respect to an *inter vivos* trust and a testamentary trust created by Harry Haskell, Sr., now deceased, (hereafter "Trustor").

The Chancellor's Opinion is reported at 282 A.2d 636. Reference is made to that Opinion for the pertinent facts of this case and for the Chancellor's conclusions and rulings.

The primary question before us is whether remainders upon termination of a life estate to the "issue" of the Trustor include Christopher Haskell, the adopted son of Trustor's son, Harry Haskell, Jr., the life beneficiary. The Chancellor held that Christopher came within that class.

The instruments in question were executed, and Trustor died, prior to 1952. The adoption statute in force at that time did not include adopted children in classes such as "issue" of anyone other than the adoptive parents of the child. See, e. g., Industrial Trust Co. v. Glanding, 28 Del. Ch. 125, 38 A.2d 752 (1944), aff'd 29 Del. Ch. 517, 46 A.2d 881 (1946). In 1952, the present adoption statutes, 13 Del.C. §§ 919, 920, were enacted. Under the present law, Christopher, as an adopted child, qualifies as "issue" of the Trustor.

The Chancellor held that the *inter vivos* trust agreement and the will of Trustor manifest an intent on his part that the law as it exists at the termination of the life estate be applied in order to ascertain the members of the class which take as ultimate beneficiaries upon that event, and not the law as it existed at the time of execution of the instruments. We cannot say that this conclusion is wrong to the extent that we would be forced to overturn it, but we prefer a slightly different approach to the problem which leads to the same result.

The Chancellor recognized that the law at the date of creation of the trusts would govern unless the instruments in question manifest a clear intent to the contrary. We think, however, the better and more modern rule is that the applicable law to the determining of a class following the termination of a life interest is the law as it exists on the date of ascertainment, unless the documents themselves demonstate a clear intent on the part of the creator to limit the class as it was defined by law on the date of execution of the trusts.

If a will or trust instrument makes a gift to "heirs" or "next of kin" after the expiration of a life estate, the remainder beneficiaries are normally determined by the law in effect at the date of death of the life tenant. Seavey v. O'Brien, 307 Mass. 33, 29 N.E.2d 196 (1940); Gilliam v. Guaranty Trust Co., 186 N.Y. 127, 78 N. E. 697 (1906); Smith v. Hunter, 86 Ohio St. 106, 99 N.E. 91 (1912); Annot. 139 A.L.R. 1107, 1111; see 2 Page on Wills, § 939. The reason for this rule is that, "when a testator makes a devise to a class, the membership in which is ascertainable at an indefinite future time, he is regarded as having contemplated the change in controlling laws prior to that time, and hence, is presumed, in the absence of any contrary context in the will, to have intended that the statutes in effect at the time the gift becomes operative be resorted to in deter-

mining membership in the class." Major v. Kammer, Ky., 258 S.W.2d 506, 508 (1953).

The cited authorites dealt with gifts to "heirs" or "next of kin", but we think they are equally applicable here to the situation.

Appellant cites Hall v. Crandall, 25 Del. Ch. 339, 20 A.2d 545 (1941); Huxley v. Security Trust Co., 27 Del.Ch. 206, 33 A.2d 679 (1943); Industrial Trust Co. v. Glanding, supra, and Rhoads v. McFarland, 28 Del.Ch. 232, 40 A.2d 542 (1945) for the proposition that at the time of the execution of the trust, and at the time of Trustor's death, adopted children could not take · as "issue" of someone other than their adoptive parents. This is of course true, but all of these cases involved interpretation of the pre-1952 statute, and the results reached were based squarely upon that statute.

■■ The Trustor is presumed to have realized that this statute was subject to later change. Since the ultimate beneficiaries were to be determined at some indefinite future time, and since the instruments exhibit no intent to the contrary under the rule we have set forth, the Trustor is presumed to have intended that the law in effect at the time the beneficiaries were to be determined is to be applied.

We note that the presumption which we now apply is not inconsistent with the prior law in this State. Indeed, it appears that such a rule was anticipated in Hall v. Crandall, supra. In that case there was a change in the adoption statute subsequent to the death of the testator but prior to the death of the life tenant. The Court noted: "The subsequent act, which is, perhaps, the pertinent one . . . makes little or no change . . ." (20 A.2d at 548).

We therefore conclude that Christopher qualifies as "issue" of Trustor as the term is used by him in the trust instruments.

Appellants question the propriety of some of the Court below's instructions to the Trustee on the basis that they do not involve questions of present exigency. In particular, appellants argue that instructions pertaining to Christopher's right to share in the principal of the trusts is improper. The Chancellor held that these questions were of present exigency. We have reviewed his reasoning and concur therewith. Accordingly, we hold for the reasons stated in the Opinion below that the questions were of present exigency and thus ripe for a decision on their merits.

The decision of the Chancellor is affirmed.