Richard D. CHICHESTER, Sarah C. Galloway, Ridgely B. Chichester, Anne K. Aquadro, and Frederick E. Klutey, Jr., Respondents below, Appellants,

v.

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under Trust Agreement with Philip D. Laird, dated April 23, 1932, Wilmington Trust Company, a corporation of the State of Delaware, Trustee under the Will of Philip D. Laird, deceased, dated February 24, 1944, Wilmington Trust Company, a corporation of the State of Delaware, Executor of the Estate of Lydia C. Laird, deceased, under Will dated February 27, 1967, Petitioners below, Appellees,

and

Gordon C. Keys, and Mary Cook Stewart Brusninghan, Respondents below, Appellees.

Supreme Court of Delaware.

Submitted May 11, 1977.

Decided July 29, 1977.

Thomas P. Sweeney, Richard G. Elliott, Jr. and Richard G. Bacon, of Richards, Layton & Finger, Wilmington, for respondents below, appellants.

William S. Potter, of Potter, Anderson & Corroon, Wilmington, for petitioners below, appellees.

Johannes R. Krahmer and David Ley Hamilton, of Morris, Nichols, Arsht & Tunnell, Wilmington, for respondents below, appellees.

Before DUFFY and McNEILLY, JJ., and WALSH, Judge.

McNEILLY, Justice.

In this appeal from the Court of Chancery, we are asked to decide, under our adoption and inheritance laws, whether adult adoptees may take by right of representation through adoptive parents (there being no question of the right to take from adoptive parents). The Vice-Chancellor decided in the affirmative, *Wilmington Trust Company v. Chichester*, Del.Ch., 369 A.2d 701 (1976), and we agree.

I

Wilmington Trust Company, in its capacity as trustee under an *inter vivos* trust created by Philip D. Laird on April 23, 1932, as trustee under a testamentary trust created by the will of Philip D. Laird executed February 24, 1944, and as executor under the will of Lydia C. Laird, Philip's wife, executed February 27, 1967, and supplemented by codicil executed November 7, 1974, brought a petition for instructions in the Court of Chancery concerning its duties under the instruments.

Mr. Laird died December 26, 1947, and Mrs. Laird died September 2, 1975, neither leaving issue. Pertinent provisions of the will and trust instruments name as present beneficiaries the issue of Lydia's mother, Eliza M. A. Chichester. One of Eliza Chichester's sons, Robert Chichester, died in 1969 leaving two adopted children (Adult Adopted Respondents) who were offspring of his wife's previous marriage. The children, minors at the time of their mother's marriage to Robert in 1949, were adults at the time of their adoption by Robert in 1964.

The Adult Adopted Respondents contend that they are "issue" of Eliza Chichester, and therefore beneficiaries under the instruments. The lineal blood relatives (Blood Line Respondents) of Eliza Chichester contend that the Adopted Adult Respondents are not "issue" of Eliza Chichester, and therefore are not beneficiaries under the instruments.

For a more complete presentation of the facts, see the Opinion below at 369 A.2d 701.

## II

The law governing the rights of adopted adults is set forth in 13 Del.C. § 954,[1] and accordingly we are called upon to construe that statute. The Blood Line Respondents base their argument that the Vice-Chancellor erred in determining that the Adult Adopted Respondents were issue on several premises.

They first contend that the language of Section 954 precludes adult adopted persons from taking through their adoptive parents, citing Delaware cases decided under statutes with the same or similar wording. See *Glanding v. Industrial Trust Co.*, Del.Supr., 29 Del. 517, 46 A.2d 881 (1946) (applying strict construction to effect of adoption on inheritance rights); *Huxley v. Security Trust Co.*, 27 Del.Ch. 206, 33 A.2d 679 (1943); *Hall v. Crandall*, 25 Del.Ch. 339, 20 A.2d 545 (1941). None of those cases concerned the inheritance rights of adult adopted persons, but rather the rights of minors.[2] Also, it is asserted that 13 *Del.C.* § 920, which gives the right to inherit through adoptive parents, applies only to minor children, and is part of a statutory scheme differentiating minor adoptees from adult adoptees. Further, the Blood Line Respondents point out that various amendments have been made to the statutory sections governing the adoption and rights of minor adopted persons, while the sections governing the adoption and rights of adult adopted persons remain unaltered.

Additionally, the Blood Line Respondents assert that certain definitional sections of Title 12, which governs decedents' estates and fiduciary relations, were improperly applied by the Vice-Chancellor in reaching his holding. They argue that these definitions are limited in application to Title 12 and have no bearing on construction of Section 954 of Title 13, both by their terms and because, as statutes of general application inconsistent with the statutes of specific

application found in Title 13, they must give way to Title 13, citing Sutherland, 2A *Statutes and Statutory Construction* § 51.05 (4th ed. 1973).

Finally, they contend that present legislative and judicial policy restricts the rights of adult adopted persons, noting that neither the General Assembly nor the Courts of this State have expanded the rights of adult adoptees, and that public policy is that adopted children are to be considered as natural children, citing *Jackson v. Riggs National Bank*, Del.Supr., 314 A.2d 178 (1973). They also point out that courts in other jurisdictions have limited inheritance rights of adult adoptees, primarily to prevent the use of adoption to deliberately forestall operation of a gift over in default of a natural heir or to perpetrate a fraud. See, e. g., *In re Estate of Griswold*, 140 N.J.Super. 35, 354 A.2d 717 (1976); *In re Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972).

We disagree with the Blood Line Respondents, and construe Section 954 to permit adult adopted persons to take as issue under the instruments in question, where no intent to the contrary appears therein. The arguments concerning legislative and judicial policy are not persuasive, as recent decisions of this Court have permitted adopted children to inherit through as well as from their adoptive parents. See *Benz v. Wilmington Trust Co.*, Del.Supr., 333 A.2d 169 (1975); *Jackson v. Riggs National Bank*, supra; *Haskell v. Wilmington Trust Co.*, Del.Supr., 304 A.2d 53 (1973). These decisions did not in any way restrict the rights of adult adoptees; rather, they evidence a trend begun in 1952 by a substantial revision of the adoption statutes 48 *Del.L.* ch. 134, toward liberalization of the rights of all adopted persons, whether minor or adult. Nor do we perceive in the General Assembly's failure to amend Sec-

---

1. 13 *Del.C.* § 954 provides:

   "Upon the issuance of the decree of adoption and forever thereafter, all the duties, rights, privileges and obligations recognized by law between parent and child shall exist between the petitioner or petitioners and the person or

   persons adopted, as fully and to all intents and purposes as if such person or persons were the lawful and natural offspring or issue of the petitioner or petitioners."

2. Concerning the inheritance rights of minor adopted persons, see 13 *Del.C.* §§ 919, 920.

tion 954 or its predecessors a policy restricting the inheritance rights of adult adopted persons. Rather, we find an intent on the part of the General Assembly, evidenced in certain definitional sections of Title 12, to permit adult adoptees to inherit through as well as from their adoptive parents. And contrary to the contentions of the Blood Line Respondents, these sections are of specific application to this case, as we are concerned with the rights of persons under testamentary and nontestamentary instruments.

Section 101 of Title 12 provides in pertinent part:

"For the purpose of wills, intestate succession and for all other purposes under this title, the following definitions shall apply:.

"(1) 'Child' includes any individual entitled to take as a child under this title by *intestate succession* from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild or any more remote descendent.

"(2) 'Issue' of a person means all his lineal descendents of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this title. . ." (emphasis added)

It is further provided in Section 508 of Title 12:

"If, for purposes of *intestate succession*, a relationship of parent and child must be established to determine succession by, *through*, or from a person:

"(1) An adopted person is the child of an adopting parent and not of the natural parent . . ." (emphasis added)

these sections were both enacted prior to ascertainment of the classes in question, and hence are relevant to resolution of the question presented. *Haskell v. Wilmington Trust Co.*, supra, at 54. It is clear that these definitional sections apply to minors as well as adults, and therefore support our conclusion that adult adopted persons are permitted to take through their adoptive parents where the pertinent instruments evince no intent to the contrary.

In the case of *Glanding v. Industrial Trust Co.*, supra, relied heavily upon by the Blood Line Respondents, the Court noted, "There is nothing in either our adoption or inheritance statutes that provides that an adopted child shall take by inheritance from its adoptive parents . . ." 46 A.2d at 888. Since our State now has inheritance statutes providing that an adopted child may inherit from and through his adoptive parents, and in view of the previously noted developments in the law, any further reliance on *Glanding* is misplaced. Accordingly, to the extent that the holding of *Glanding* is inconsistent with our decision in this case, it is abandoned.

It is clear under our decisional law that had the children been adopted as minors they would have been entitled to take as the issue of Robert Chichester. *Benz v. Wilmington Trust Company*, supra; *Jackson v. Riggs National Bank*, supra; *Wilmington Trust Co. v. Haskell*, supra. We find in neither the statutes nor the cases any rational reason for a different result because they were adopted as adults. When a decree of adoption is issued, § 954 creates all of the duties, rights, privileges and obligations "recognized by law" between parent and child. While at one time such rights and privileges may have been more limited than those which exist in a natural parent-child relationship, there is now no distinction recognized by law in the case of a child adopted while a minor. We construe § 954 to require the same result in the case of a child adopted as an adult.

In considering the contention that adoptions could be used to perpetrate a fraud or to prevent the operation of a gift over, we bear in mind that no such allegation has been made in this case; the resolution of such a question will be left to the future. The finality of adoption does not preclude inquiry into its purpose in the context of determining a class of beneficiaries, and the intent or purpose of the testator or

trustor can always be examined to determine if he intended to benefit adopted individuals.

\* \* \* \* \* \*

Affirmed.